1  **I Braun Degenshein** (SBN 138832)
**Attorney at Law**
2  81 Skyway Lane
Oakland, CA 94619
3  (510) 553-9669
(510) 633-1900 (fax)
4
Attorney for Plaintiff
5  Paragon Industries, Inc.

6

7

8

9              **IN THE UNITED STATES DISTRICT COURT**

10           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12  **WALKER & ZANGER, INC.,**          Case No.: C04-1946 VRW

13              Plaintiff,              **MEMORANDUM OF POINTS AND**
                                        **AUTHORITIES IN SUPPORT OF**
14       vs.                           **DEFENDANTS' MOTION FOR**
                                        **SUMMARY JUDGMENT**
    **PARAGON INDUSTRIES,** d/b/a
15  **BEDROSIANS,**                         Date:    March 2, 2006
                                            Time:    2:00 p.m.
16                                          Place:   Courtroom 6, 17th Fl.
              Defendants                    Before:  Hon. Vaughn R. Walker
17

18

19

20

21

22

23

24

25

26

27

28

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT**

MSJ MPA Final.doc

# TABLE OF CONTENTS

I. RELIEF REQUESTED AND INTRODUCTION ................................................................1

II. STATEMENT FACTS ................................................................2

III. SUMMARY JUDGMENT IS APPROPRIATE ................................................5

IV. PLAINTIFF CANNOT SUPPORT ITS BURDEN OF PROVING THAT DEFENDANT VIOLATED THE LANHAM ACT. ................................................6

  A. Overview ................................................................6

  B. Defendant Did Not Violate the Lanham Act. ................................................7

    1. Elements of the Claim ................................................................7

    2. Plaintiff Has Failed to Identify Any Protectable Trade Dress ..................7

    3. Plaintiff's Tile Designs Are Functional. ................................................11

      a) Prong 1: Plaintiff's Tile Designs, Lines and Displays Yield Utilitarian Advantages ................................................12

      b) Prong 3: Plaintiff's Website, Advertising, Marketing, Witnesses and Copyright Tout the Trade Dress' Utilitarian Advantages. ..............14

    4. Plaintiff Has Failed To Establish Secondary Meaning ...........................15

      a) Plaintiff Has No Direct Evidence of Secondary Meaning. ...............15

      b) Plaintiff Has No Circumstantial Evidence of Secondary Meaning ....16

        i. Plaintiff's Tiles, Tile Lines and Tile Displays Had Not Been In Existence Long Enough to Acquire Secondary Meaning. -----16

        ii. Plaintiff's Advertising Does Not Promote Plaintiff's Claimed Trade Dress as a Source Identifier and Its Source Identifying Advertising Expenditures Are Nonexistent -----17

        iii. Plaintiff Has No Evidence of its Products' Market Placement.-----18

        iv. Plaintiff Has No Proof of Intentional Copying.-----18

        v. Plaintiff Has No "Look For" Promotions -----19

    5. Plaintiff Has Failed To Establish Likelihood Of Confusion .......................19

      a) There is No Evidence of Actual Confusion ....................................20

      b) Defendant Did Not Copy Any Trade Dress With the Intent to Deceive ..............21

      c) Any Similarity To the Alleged Trade Dress is Irrelevant ....................21

d)  The Products and Marketing Channels Are Different ..............................................21

C.  PARAGON DID NOT COMMIT FALSE ADVERTISING ..............................................22

D.  PLAINTIFF'S STATE AND COMMON LAW ACTIONS MUST FAIL......................22

E.  DEFENDANT DID NOT COMMIT COPYRIGHT INFRINGEMENT.........................22

1.  Prong 1:  Plaintiff's Copyright Certificates Are Not Valid ............................23

2.  Prong 2:  Plaintiff's Tile Designs Lack the Required Originality ..............................23

V.  CONCLUSION.............................................................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

1

## TABLE OF AUTHORITIES

2

3
    **Cases**

4
*AmBrit Inc. v Kraft Inc.,* 812 F.2d 1531 (11th Cir Fla 1986) ...................................................... 21

5
*AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341 (1979) ............................................................... 19, 20

6
*Anderson* v. *Liberty Lobby,* 477 U.S. 242, 247-48 (1986)................................................................ 5

7
*Apple Computer, Inc. v. Microsoft Corp.,* 35 F.3d 1435 (9th Cir.1994) ................................... 6, 25

8
*Ashley Furniture Indus., Inc. v. SanGiacomo N.A.,* 187 F.3d 363 (4th Cir.1999)........................ 13

9
*Big Island Cookies v. Cookie Corner,* 269 F.Supp.2d 1236 (D. HI 2003) .................................... 7

10
*Brooks Shoe Mfg. Co. v. Suave Shoe Co.,*716 F.2d 854(11[th]Cir.1983); ...................................... 17

11
*Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794 (9th Cir. 1970)............................ 16

12
*Celotex Corp.* v. *Catrett,* 477 U.S. 317 (1986) .......................................................................... 6, 25

13
*Central Tools, Inc. v. Products Engineering Corp.,* 936 F.Supp. 58 (D.RI 1996) ...................... 10

14
*Century 21 Real Estate Corp. v. Sandlin,* 846 F.2d 1175 (9th Cir. 1988) .................................... 6

15
*Cleary v. News Corp.,* 30 F.3d 1255 (9th Cir. 1994)................................................................. 6, 22

16
*Clicks Billiards, Inc.* v. *Sixshooters, Inc.,* 251 F.3d 1252 (9th Cir. 2001)......................... 7, 12, 16

17
*Continental Laboratory Products, Inc. v. Medax Intern., Inc.,*114 F.Supp.2d 992

18
   (S.D. Cal. 2000). ..................................................................................................................... 17

19
*DCNL Inc. v. Almar Sales Co.,* 47 U.S.P.Q.2d 1406 (N.D. Cal. 1997)................................. 14, 19

20
*Disc GolfAss'n, Inc.* ***v.*** *Champion Discs, Znc.,* 158 F.3d 1002 (9th Cir. 1998) ...................... 6, 12

21
*Durham Industries. v. Tomy Corp.*, 630 F.2d 905 (2d Cir. 1986) ......................................... 22, 23

22
*Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211

23
   (9th Cir. 1997)......................................................................................................................... 23

24
*Fabrica, Inc. v. El Dorado Corp.,* 697 F.3d 890, (9th Cir. 1993) ............................................... 12

25
*Falcon Rice Mill Inc v Community Rice Mill Inc.,* 725 F2d 336 (5th Cir La 1984). ................... 21

26
Fed.R.Civ.Proc. 30(b)(6) ......................................................................................................... 8, 24

27
*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991)......................................... 6, 22, 23

28

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

1    *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d 1378 (9th Cir. 1987) ........................................ 19

2    *Fuddruckers Inc. v. Doc's B.R. Others, Inc.,* 826 F. 2d 837 (1987) ................................. 15, 18, 19

3    *I.P. Lund Trading ApS v. Kohler Co.,* 118 F.Supp.2d 92 (D.MA 2000) ................................ 13, 15

4    *In re Kwik Lok Corporation,* 217 U.S.P.Q. (BNA) 1245 (T.T.A.B. 1983) ................................. 18

5    *In re Redken Laboratories, Inc.,* 170 U.S.P.Q. 526 (T.T.A.B. 1971) .......................................... 17

6    *In re Swift & Co.,* 223 F.2d 950 (C.C.P.A. 1955) ..................................................................... 17

7    *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819 (9th Cir.1993)....................... 7

8    *Kendall-Jackson Winery, Ltd. v. E&J Gallo Winery,* 150 F.3d 1042 (9th Cir. 1998) .................... 7

9    *Kykes Laboratory, Inc. v. Kalvin,* 610 F.Supp 849 (C.D. Cal. 1985) ........................................... 19

10   *Landscape Forms, Inc. v. Columbia Cascade Co.,* 113 F.3d 373 (2d. Cir. 1997).............. 9, 10, 11

11   *Leatherman Tool Group, Inc. v. Cooper Industries, Inc.,* 199 F.3d 1009 (9th Cir. 1999) .......... 12

12   *Lennon v. Seaman,* 84 F.Supp.2d 522 (S.D.NY, 2000) ............................................................... 23

13   *Litchfield v. Spielberg,* 736 F.2d 1352 (9th Cir.1984), *cert. Denied,* 470 U.S. 1052 (1985) ....... 23

14   *Marc Bric Display Corp. v. Joseph Struhl Co., Inc.,* 2003 WL 21696318 (D.RI 2003) .............. 19

15   *Midway Mfg. Co. v. Bandai-America, Inc.,* 546 F. Supp. 125 (D.N.J. 1982).............................. 23

16   *New West Corp v. NYM Co. of Calif., Inc.*, 595 F.2d 1194 (9th Cir. 1979) .................................. 6

17   *North Coast Industries v. Jason Maxwell, Inc.,* 972 F.2d 1031 (9th Cir. 1992)........................... 23

18   *Paddington Corp. v. Attiki Importers & Distributors, Inc.,* 996 F.2d 577, 582-84

19      (2d Cir. 1993)............................................................................................................................ 7

20   *Perini Corp. v. Perini Constr.,* 915 F.2d 121 (4th Cir. 1990)...................................................... 15

21   *Publications Int'l., Ltd. v. Landoll, Inc.,* 164 F.3d 337, 339, 343 (7th Cir. 1998) ........................ 7

22   *Rachel v. Banana Republic inc.,* 831 F.3d 1503 (9th Cir. 1987) ................................................. 12

23   *Roulo v Russ Berrie & Co.*, 886 F.2d 931 (7th Cir Ill 1989), *cert. denied,*

24      *Russ Berrie & Co. v Roulo,* 493 US 1075 (1990).................................................................... 7

25   *Satava v .Lowry,* 323 F.3d 805 (9th Cir. 2003)........................................................................... 25

26   *Schwinn Bicycle Co. v. Diversified Products Corp.,* 740 F.Supp. 517 (N.D. IL 1990).......... 12, 21

27   *Seed Lighting Design Co. v. Home Depot,* 2005 WL 1868152 at *5 (N.D. CA 2005) .... 12, 15, 18

28   *Sega Enterprises Ltd., v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir.1992) ..................................... 11

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

1  *Shaw v. Lindheim*, 919 F.2d 1353 (9th Cir. 1990) ............................................................ 6

2  *Smith v. Montoro,* 648 F.2d 602 (9th Cir. 1980).................................................... 20, 22

3  *Stuart Hall Co. v. Ampad Corp.*, 51 F.3d 780 (8th Cir. 1995)..................................... 17

4  *Two Pesos v. Taco Cabana,* 505 U.S. 763, 769 (1992) ............................................ 7, 19

5  *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609 (9th Cir.1989)....................... 15, 16

6  *Wallace International Silversmiths, Inc. v Godinger Silver Art Co., Inc.,* 916 F.2d 76, 80

7     (2nd Cir. 1990)..................................................................................................... 13, 17

8  *Wal-Mart Stores, Inc. v. Samara Brothers* .................................................................. 1

9  *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC,* 259 F.3d 25

10    (2nd Cir. 2001). .......................................................................... 15, 16, 17, 18, 19, 23

11 *Yurman, Design, Inc. v. PAJ, Inc.,* 262 F.3d 101 (2d Cir. 2001)....................... 7, 9, 11

   **Statutes**

13 15 U.S.C. § 1125(a) .................................................................................................. 2, 11

14 15 U.S.C. § 1052(f).................................................................................................. 2, 17

15 17 U.S.C. § 409(c) .................................................................................................. 22, 24

16 Cal Bus & Prof Code § 17200 ...................................................................................... 1

17 Fed.R.Civ.P 30(b)(6)..................................................................................................... 8

18 Fed.R.Civ.P. 56(c) ..................................................................................................... 2, 5

   **Treatises**

20 J.T. McCarthy, *McCarthy on Trademarks and Unfair Competition* ............................ 6, 9, 10, 19

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page v**

MSJ MPA Final.doc

**IMAGES**



I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page vi

MSJ MPA Final.doc

TO THE PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Paragon Industries, Inc., d/b/a Bedrosians ("Defendant" or "Paragon") hereby moves the United States District Court for the Northern District of California for Summary Judgment as against Walker & Zanger, Inc. (hereinafter "Plaintiff"). This Motion is noticed to be heard before the Honorable Vaughan R. Walker on March 3, 2006 at 9:30 a.m. in Courtroom 6 of the U.S. District Courthouse, 450 Golden Gate Ave., San Francisco, California.

## I.      RELIEF REQUESTED AND INTRODUCTION

For the reasons set out below, Defendant requests that the Court dismiss with prejudice Plaintiff's claims for (1) violation of section 43(a) of the Lanham Act through unfair competition and false advertising by misappropriating plaintiff's trade dress and making false claims about plaintiff's products; (2) violation of section 43(a) of the Lanham Act by infringing plaintiff's trade dress and thereby confusing consumers as to the origin of defendant's goods; (3) violation of section 43(a) of the Lanham Act by falsely claiming that plaintiff's and defendant's goods have the same origin; (4) infringement of plaintiff's copyrights in its tiles; (5) violation of the California unfair competition law, Cal Bus & Prof Code § 17200; and (6) false advertising under California statutory and common law.

Regarding Plaintiff's unfair competition claims, in *Wal-Mart Stores, Inc. v. Samara Brothers,* the United States Supreme Court recognized that

> In the case of product design . . . [c]onsumers are aware of the reality that, almost invariably, even the most unusual of product designs--such as a cocktail shaker shaped like a penguin--is intended not to identify the source, but to render the product itself more useful or more appealing.

529 U.S. 205, 213 (2000). Thus, the Court eliminated the notion that a product's design can be inherently distinctive for fear that competition would be deterred by even the mere "plausible threat of successful suit . . . ." *Id.* at 214.

The instant matter, involving the alleged "inherently distinctive" (*Complaint, ¶¶ 8-11*) trade dress of five tile designs, two tile lines and an unknown number of unidentified and undisclosed tile displays, has proved to be precisely the sort of "anti-competitive strike suit" that the Supreme Court sought to eliminate in *Wal-Mart. Id.*

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 1**
MSJ MPA Final.doc

1   Plaintiff has not provided any evidence that its tile designs are nonfunctional, that they

2   have obtained secondary meaning, or that there is a likelihood of source or affiliation confusion

3   between the parties' tiles.  In fact, Plaintiff has produced no evidence whatsoever for two of its

4   tile designs, and its survey evidence on secondary meaning and likelihood of confusion, if not

5   inadmissible, would prove Defendant's position as a matter of law.

6   Plaintiff has not provided evidence that there is a likelihood of confusion between either

7   of Plaintiff's two allegedly infringed tile lines and Defendant's single tile line, either.  Similarly,

8   Plaintiff has provided no evidence whatsoever to prove that its tile *displays* are nonfunctional,

9   have obtained secondary meaning, or are likely to be confused with any of Defendant's tile

10   displays.  Indeed, Plaintiff has not identified any evidence whatsoever supporting the notion that

11   Defendant's tile displays are anything like Plaintiff's tile displays.

12   Rather, Plaintiff's evidence proves that its tiles, tile lines and tile displays are functional

13   or simply not copied by Defendant.  Its own surveys prove that its tile designs have *no* secondary

14   meaning and that there is *no* likelihood of confusion.  And its own witnesses, employees and

15   officers attest to the fact that neither they nor the general public were or would be confused and

16   that they have no evidence to support any of Plaintiff's claims.

17   Lastly, judgment also must be entered in favor of Defendant on Plaintiff's copyright

18   claim because, other than statutory presumptions that will be rebutted, Plaintiff has no evidence

19   that its tile designs are original.  Judgment against Plaintiff also must be entered because Plaintiff

20   itself appropriated verbatim the designs for its two copyrighted tiles from the public domain and

21   there is no evidence that Plaintiff added any original contributions to those designs.  Separate

22   discussions of each of these issues are set out below.

23   ## II.   STATEMENT FACTS

24   **Plaintiff's Tiles:**  Plaintiff markets and distributes ceramic and other tiles that are

25   produced to its specifications by other manufacturers.  *Complaint,* ¶ 7; *Declaration of IBraun*

26   *Degenshein ("*IBD*"),¶2,* **Exh. A**: *Petrocelli Deposition Transcript[1], 12:16-25, 13:1-4, 20-25;*

27

28   [1] For the sake of brevity, deposition transcripts will be referred to simply by the witness' last name, followed by

**I Braun Degenshein**
**Attorney at Law**
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 2**
MSJ MPA Final.doc

14:1-3, 41:8-10.  Plaintiff's tiles are sold in its own showrooms, through independent tile dealers and distributors.  *Complaint*, ¶ 12; **Exhs. A** (*Petrocelli*, 12:16-25, 17:1-10, 14:17-25) and **C** (*Bastone*, 8:15-21);  **IBD Exh. D** (*Pltf's Resp. to Interrog. Nos. 15-16*).

Plaintiff markets its tiles in thematic lines.  For example, Plaintiff's "Avignon" line has a "French Provençal" theme and its "Newport" line has a "whimsical" theme with "seashore-related designs and colors."  *Complaint,* ¶18.; **IBD Exh. D** (*Pltf's Resp. to Interrog. No. 16).* Four out of at least sixteen Avignon tile designs and one of at least eleven tile designs in its Newport line are pertinent:  the Romanesque, Fleur de Lis, Treillage and Perle moldings from the former, and the Westport Molding from the latter.  The five tiles at issue were made for Plaintiff in Mexico and have "Walker Zanger" stamped on the back of each.  **IBD**, ¶3, **Exh. B** (*Becker*, 33:3-10, 121: 23-25, 122: 1-4).

Plaintiff began promoting the Avignon and Newport lines in August, 1999.  *Complaint,* ¶11.  It markets its tiles through its showrooms, authorized dealers, catalogs, cross-promotions with other companies, design centers[2], over the Internet and in trade and general circulation publications that target affluent end users.  *Complaint*, ¶ 12; **IBD**, *2, 4, 5:* **Exhs. A** (*Petrocelli,* 103:17-25, 104:1-12, 109:12-25); **C** (*Bastone,* 8:15-21, 21:16-17, 23:3-5); and **D** (*Resp. to Interrog Resp. No. 15*).  It no longer markets its products at major trade events like the annual "Surfaces" show in Las Vegas.  *Id., ¶2,* **Exh. A** (*Petrocelli,* 103:17-25, 104:1-12, 109:12-25).

Plaintiff first learned of Paragon's "Bellisima" line of tiles at the "Surfaces" trade show in Las Vegas in January, 2004.  On February 10, 2004, Plaintiff filed expedited applications to register the copyrights for all five tile designs.  **IBD**,¶6, **Exh. E** (*Copyright Applications).*

---

page and line references.  The excerpts are attached to the Declaration of I Braun Degenshein as exhibits.  The "IBD **Exh. __**" reference before the witnesses' designation refers to the exhibit tab in the Degenshein Declaration.  All other exhibits to the Degenshein Declaration will be referred to as "IBD **Exh. ___.**"

[2] A "design center" is either a showroom owned by the builder or one that is independently owned that contracts with the builder"  **IBD** *Decl.,¶14,* **Exh. M** (*Wright,* 12:23-13:1).  The contract "with new home builders to assist their clients in making finish selections for their new homes."  *Id.,¶8,* **Exh. G** (*Reed,* 11:18-20).  Design centers often require credentials to get in, and generally are not open to the public or walk in traffic.  *Id.,¶2,* **Exh. A** (*Petrocelli,* 19:3-9).

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

1  However, the Copyright Office refused to register the Perle, Fleur de Lis, and Westport Molding

2  designs because they lacked the requisite originality, i.e., they were based upon common, public

3  domain designs.  *Id.*

4         Apparently unaware of the historical precedence for the "Romanesque Molding" and

5  "Treilage Molding" designs, the Copyright Office issued registrations for those tiles.  The former

6  received Registration number VA 1-225-300 and the latter received Registration Number VA 1-

7  225-301.  *Complaint,* **Exh. B.**  Both certificates state a first date of publication of August 3,

8  1999.  *Id.*  The certificates indicate that the Romanesque Molding was derived from "Old Wood

9  Carvings" and that the Treilage Molding was derived from an "Old Frieze."  *Id.*

10        **Paragon's Tiles:**  Paragon imports, distributes, and sells tiles designed for home décor.

11  Its tiles are marketed to customers of far more modest means than Plaintiff's targeted customer.

12  **IBD***,¶7,* **Exh. F** (*Bedrosian,* 92:17-25, 231:4-6). Its tiles are sold at a significantly lower price

13  point as well.  **IBD***,¶10,* **Exh. I** (*Leiferman,* 30).

14        Paragon sells its tiles through its own showrooms and through design centers.  **IBD***, ¶9,*

15  **Exh. H** (Movesian, 15:21-25; 16, 17:2-8).  Its tiles are manufactured either by itself or by others

16  and sold under Paragon's trademarks**.   IBD***,¶7,* **Exh. F** (Bedrosian, 70:9-25, 71:1, 76:3-12,

17  81:21-24; 82:6-9).   Paragon also distributes and sells other manufacturers' tiles under those

18  manufacturers' respective trademarks. **IBD,**¶¶ 7, 9**, Exhs. F** (Bedrosian,143:10-13); and **H**

19  (Movesian, 22:1-4).

20        Paragon's marketing budget is a small fraction of Plaintiff's as Paragon has a completely

21  different approach to advertising.  Paragon does not market its individual tiles and tile lines in

22  display advertisements of any kind, anywhere. *Movsesian Decl.,* ¶ 2.  Instead, a completely

23  insignificant amount is directed to generic advertising that touts showroom and warehouse

24  locations with generic categories of products available.  **IBD** *Decl., ¶18,* **Exh. Q** (*Dfnts' Resp. to*

25  *Interrogatory No.* 9 at 15:3-9).  It also dedicates a small portion of its budget on its Internet web

26  site and at to industry trade shows like "Surfaces."  **IBD***, ¶18,* **Exh. Q** (*Dfnts' Resp. to*

27  *Interrogatory No.* 9 at 15:3-9).  The remainder and largest share of Paragon's modest budget

28  goes to direct mailings to "extremely knowledgeable and sophisticated" professionals like

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 4**

MSJ MPA Final.doc

1   architects, designers, and contractors who "can tell the difference between the various

2   manufacturers' tiles." *Id.* (*Dfnts' Resp. to Interrogatory No. 10* at 16:17-20); *see also,* **IBD**,*¶9*,

3   **Exh. H** (*Movesian,* 14, 28:9-13, 20-22, 30:6-16, 33:21-25, 34:1-5).

4       All five of Paragon's tiles are marketed under the "Tilecrest" trademark as part of the

5   "Bellissima" line. **IBD**,*¶7*, **Exh. F** (*Bedrosian,* 81:2-10); *Bedrosian Decl.,* **Exh. A** (*"Tilecrest*

6   *Collection: Bellisima"*).

7       Paragon's tiles are mass manufactured in China using a dry press extrusion process.

8   *Bedrosian Decl.,* ¶4, **Exh. B** (*Methods of Manufacture*).  The backs of each tile are stamped with

9   Paragon's unique, stylized "B" logo.  *Id.,* ¶3. The parties' different manufacturing methods result

10  in substantial dissimilarities are readily discernable by industry professionals like interior

11  designers.  **IBD**,*¶3,7-8,10*,  **Exhs. B** (*Becker,* 141:25 to 142:9), **F** (*Bedrosian,* 231:7-14, 232:13-

12  14 & 20-25, 233:1-4), **G** (*Reed,* 35:10-24, 83:13-25, 84:1-2 & 21-25, 85:11-21) and **I**

13  (*Leiferman,* 29, 21-25, 66:6-17).   The differences are apparent to Plaintiff's high-income target

14  consumers as well.  *Id.,* **Exh. I** (*Leiferman,* 144:23-25, 145:1-19).

15      Paragon began planning the Bellisima line in 2002.  **IBD**,*¶7*, **Exh. F** (*Bedrosian,* 91:19-

16  21).  During this process, hundreds of designs were considered, including wallpaper, tiles with

17  glazes, moldings, catalogs and many other manufacturers' tile designs.  *Id.* at 93:21-25, 95:1 &

18  12-25, 96:1 & 8-18, 282:6-21.

19              **III.    SUMMARY JUDGMENT IS APPROPRIATE**

20      Summary judgment must be granted when the evidence of record, viewed in a light most

21  favorable to the nonmoving party, raises no genuine issue of material fact, at which time the

22  mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise

23  properly supported motion for summary judgment.  Fed. R. Civ. P. 56(c);  *Anderson* v. *Liberty*

24  *Lobby,* 477 U.S. 242, 247-48 (1986).

25      More importantly, "the plain language of Rule 56(c) mandates the entry of summary

26  judgment . . . against a party who fails to make a showing sufficient to establish the existence of

27  an element essential to that party's case, *and on which that party will bear the burden of proof at*

28  *trial.*" *Celotex Corp.* v. *Catrett,* 477 U.S. 317, 322 (1986).

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 5**

MSJ MPA Final.doc

1       Summary judgment is appropriate in a trade dress case. *See Disc GolfAss'n, Inc.* **v.**

2   *Champion Discs, Znc.,* 158 F.3d 1002, 1006 (9th Cir. 1998) (summary judgment for defendant

3   granted since no genuine issue of fact as to functionality of trade dress).   Summary judgment

4   also is appropriate in a copyright infringement case.  *Shaw v. Lindheim*, 919 F.2d 1353, 1359 (9th

5   Cir. 1990); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); s*ee also, Apple Computer,*

6   *Inc. v. Microsoft Corp.,* 35 F.3d 1435, 1446 (9th Cir.1994) (Walker, J) (Summary Judgment for

7   defendant granted in case involving appearance of computer icons).

8       **IV.   PLAINTIFF CANNOT SUPPORT ITS BURDEN OF PROVING THAT**
9                   **DEFENDANT VIOLATED THE LANHAM ACT.**

   **A.  OVERVIEW**

10       Public policy favors free competition.  1 J.T. McCarthy, *McCarthy on Trademarks &*

11   *Unfair Competition* (hereinafter "__ *McCarthy*")*,* § 1:1.  Protection from copying is the

12   exception to the rule, not the rule.  *Id.*  This important public policy protects those like Paragon

13   from others like Plaintiff who seek to monopolize copies of centuries-old public domain designs.

14       Regarding Plaintiff's Lanham Act and analogous state and common law claims, the Ninth

15   Circuit stated that the "ultimate test" for unfair competition (regardless of label) is the same as

16   for trademark infringement, i.e., whether the public "is likely to be deceived or confused" by the

17   similarity of two parties' goods or services.  *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d

18   1175, 1178 (9th Cir. 1988) (*citing New West Corp v. NYM Co. of Calif., Inc.*, 595 F.2d 1194,

19   1201 (9th Cir. 1979)); *Cleary v. News Corp.,* 30 F.3d 1255, 1262-63 (9th Cir. 1994).

20       Regarding Plaintiff's copyright infringement claim, Plaintiff must first prove that more

21   than trivial elements of its designs are sufficiently original, and that Defendant copied those

22   original elements.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

23       As set out in the discussions below, Plaintiff has no evidence whatsoever to support its

24   allegations that it has protectable rights of any kind in its tile designs, tile displays and tile lines,

25   whether under unfair competition, false advertising or copyright laws.

26

27

28

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 6**

MSJ MPA Final.doc

**B. DEFENDANT DID NOT VIOLATE THE LANHAM ACT.**

    **1.    Elements of the Claim.**

Section 43(a) of the Lanham Act makes actionable the deceptive and misleading use in commerce of "any word, term, name, symbol, or device" on or in connection with any goods.  15 U.S.C. § 1125(a); *Kendall-Jackson Winery, Ltd. v. E&J Gallo Winery,* 150 F.3d 1042, 1046 (9th Cir. 1998).  This provision includes trade dress as well as trademarks.  *Id.*

Plaintiff's §43(a) claims are based upon the claimed trade dress of its tiles, tile lines and tile displays.  Trade dress refers to the ability of a product's appearance (as opposed to its name, manufacturer, or concept) to connote its source.  *See Paddington Corp. v. Attiki Importers & Distributors, Inc.,* 996 F.2d 577, 582-84 (2d Cir. 1993); *Publications Int'l., Ltd. v. Landoll, Inc.,* 164 F.3d 337, 339, 343 (7th Cir. 1998), *cert. denied,* (US) 119 S. Ct. 1498 (1999).  It is comprised of the total image of a product and may include features such as size, shape, color, color combinations, texture or graphics, and even particular sales techniques.  *International Jensen, Inc. v. Metrosound U.S.A., Inc.,* 4 F.3d 819, 822 (9th Cir.1993).

Plaintiff has the burden of proof to sufficiently identify the protectable elements of its trade dress.  *Yurman, Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 114 (2d Cir. 2001).  It then must prove that its claimed trade dress (1) is non-functional, (2) has acquired secondary meaning, *and* (3) is likely to be confused with Defendant's tiles, tile lines and tile displays by members of the consuming public. *See Wal-Mart Stores,* 529 U.S. at 209, 211-14; *Two Pesos v. Taco Cabana,* 505 U.S. 763, 769 (1992); *Clicks Billiards, Inc.* v. *Sixshooters, Inc.,* 251 F.3d 1252, 1257-58 (9th Cir. 2001).  Plaintiff's failure to meet any one of these requisite elements defeats its Lanham Act claims in their entirety.

    **2.    Plaintiff Has Failed to Identify Any Protectable Trade Dress**

**As a threshold matter, b**efore a claim for trade dress infringement can be considered, the allegedly infringed elements of the claimed trade dress must be identified with specificity. *Yurman Design* at 114; s*ee also, e.g. Big Island Cookies v. Cookie Corner,* 269 F.Supp.2d 1236, 1246 (D. HI 2003) (*citing and applying Yurman*).  Plaintiff has identified its alleged trade dresses in nothing more than abstract, ambiguous and general terms that apply to any number of tile

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

designs, tile lines and tile displays manufactured by innumerable manufacturers:

> [W]alker Zanger's tiles are distinguished by their classical designs and careful craftsmanship, which give the tiles the look of Old World handiwork. The tiles are further distinguished by the depth and dimensions of their design relief, i.e., the range between the highest and lowest points of the relief, as well as by the level of intricate detailing at all levels of the relief. The tiles are further distinguished by Walker Zanger's use of colors and glazes that enhance the appearance of Old World craftsmanship. Walker Zanger further invokes Old World craftsmanship through its unique approach to designing and marketing tiles, through which Walker Zanger creates collections of tiles designed with a particular theme in mind.

**IBD**, *¶5,* **Exh. D** (*Pltf's Resp. to Interrog No. 15* at 30:1-9). At Paragon's Fed.R.Civ.Proc. 30(b)(6) deposition of Plaintiff, the witness who was produced specifically to testify regarding Plaintiff's alleged trade dress and the various elements thereof added nothing to clarify matters. For example, regarding the protected elements generally, he stated "I believe the protected elements of the tile line are that the specific designs of each tile and the way that those designs work together to promote a cohesive design package or design vision. . . ." **IBD**,*¶3,* **Exh. B** (*Becker,* 150:5-9). Given many opportunities to clarify its vague identifications of its tiles' trade dress elements, Plaintiff failed. *Id.,* 73:9 to 89:21. To this day Plaintiff has not offered to produce another witness more qualified to respond to those questions and issues. **IBD**, *¶19; see, Fed.R.Civ.Proc.* 30(b)(6).

Likewise, Plaintiff ambiguously states that "Each of [its] product lines is devoted to a particular artistic concept, and incorporates coordinated tile pieces that, used in combination, evoke that concept." **IBD**,*¶5,* **Exh. D** (*Pltf's Resp. to Interrog. No. 16* at 31:5-7). Its Avignon line "uses carefully crafted, classically inspired designs and colors to create a French Provençal theme" and its Newport line "uses whimsical, seashore-related designs and colors to create a light, beachfront theme." *Id.,* 31:7-10. The lines were coordinated to "evoke a particular theme, and the particular designs and colors used in the Avignon and Newport product lines[] are distinctive aspects that the consuming public associates with Walker Zanger . . . ." *Id.,* 31:10-13.

Plaintiff's evasive responses to direct questioning that would have permitted better identifications did nothing to help Plaintiff. **IBD**,*¶3,* **Exh. B** (*Becker,* 89:22 *ff.*)

Plaintiff's description of the protectable elements of its tile displays' trade dress is no less

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

1    abstract, ambiguous and overly general:

2         Walker Zanger pioneered the use of three types of tile displays . . . .  In its built-in
          vignettes, Walker Zanger builds a full-size model of a portion of a home – a
3         corner of a bathroom . . . or a wall of a kitchen, complete with fixtures – and uses
          that model to demonstrate how its tiles may be used in a real life setting.
4         [Plaintiff's] concept boards are a smaller-scale, portable version of the same idea
          – [Plaintiff] recreates on a board a section of a kitchen backsplash . . . fully
5         grouted, to demonstrate how its coordinated tiles may be used to achieve a
          particular effect.  [Plaintiff's] library boards [demonstrate] the concept-oriented
6         product lines that are unique to it [including] samples of the tiles that make up a
          particular product line.  [It] is decorated with complementary colors and designs,
7         and includes a narrative describint the design concept of the particular line.

8    **IBD**,¶*5,* **Exh. D** (*Pltf's Resp. to Interrog. No.17* at 32:7-19).  It added that "*all* feature Walker

9    Zanger's logo." *Id.,* 32:19.

10        Analyzing the elements of the trade dress of Plaintiff's tile displays is unnecessary,

11   however, because Plaintiff has absolutely no evidence that Paragon has utilized even a single

12   stated element, much less the entire look and feel as described.

13        The concept of "trade dress" is not so pliable that it can be stretched to give exclusive

14   rights to such vague and abstract images or marketing themes as these.  *Yurman Design,* 262 F.3d

15   at 114; 1 *McCarthy,* §§ 8:3, 8:5.1, 8:6.  Extending protection without clear articulation would

16   hamper efforts to market competitive goods.  *Yurman* at 114 (quoting *Landscape Forms, Inc. v.*

17   *Columbia Cascade Co.,* 113 F.3d 373, 380 (2d. Cir. 1997)).

18        All of the cases that have addressed the issue have held that descriptions such as

19   Plaintiff's are insufficient to establish an identifiable trade dress.  For example, *Yurman*

20   described its jewelry line's trade dress in terms of an "overall impression."  262 F.3d at 114.  It

21   stated that its jewelry had "a structural, almost industrial motif of twisted multi-strand cable,

22   executed with a polished and elegant finish, and set off by gemstones."  *Id.*  The court rejected

23   this "overall impression" theory stating that Yurman "never identified the elements that make up

24   its trade dress… [requiring] dismissal of the Lanham Act claim as a matter of law." *Id.*

25        Similarly, in *Landscape Forms,* the Second Circuit held that "a plaintiff's inability to

26   explain . . . exactly which aspects of its product design(s) merit protection may indicate that . . .

27   claimant seeks protection for an unprotectable style, theme or idea."  113 F.3d at 380.  The

28   descriptions of the furniture line elements included descriptions much like Plaintiff's

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 9**

MSJ MPA Final.doc

1    descriptions.  *Id.,* 381-82.  In that case, the court admonished that "these and the many other

2    similarly laudatory descriptions fail to indicate what makes the furniture line distinctive and

3    perceived as coming from a single source.  *Id.* at 382.  It then noted that, "Tellingly, the more

4    detailed parts of the above descriptions apply to some, but not all, of the ten items in the [line]."

5    *Id.*

6            In *Central Tools, Inc. v. Products Engineering Corp.,* the court required the "discrete

7    elements" of the trade dress to be separated out in a list so that it could "coherently define

8    exactly what the trade dress consists of.  936 F.Supp. 58, 65 (D.R.I 1996), *citing* 1 *McCarthy* §

9    8.01[1][c].  Because the plaintiff "designed its arguments to cast its trade dress over every dial

10   indicator set it makes," the court refused to conduct a Lanham Act inquiry over an entire line,

11   limiting the inquiry instead to three products for which the plaintiff met the court's test in

12   individual detail.  *Id.* at 65-66.  Here, Plaintiff's descriptions are no more specific or less

13   laudatory than any of the above.

14           Plaintiff itself admits that it is not the only company that has "coordinated tile pieces"

15   that are "devoted to a particular artistic concept" that when "used in combination, evoke that

16   concept."  **IBD***, ¶2,3,10:* **Exhs. A** (*Petrocelli,* 64:1-13), **B** (*Becker,* 92:14-25, 93:1) and **I**

17   (*Leiferman,* 38:3-12)*.*  Numerous tile companies were identified by name, and at least eight have

18   been identified by name as having either a French Provençal tile line or a tile line with a French

19   feel.  **Exh. I** (*Leiferman,* 38:3-12) and **G** (*Reed,* 37:9-12; 38).

20           Plaintiff's stated individual elements do nothing to identify the protectable trade dress

21   elements that allegedly act as source identifiers.  For example, the "depth of relief" that Plaintiff

22   claims is nowhere defined or distinguished despite express invitations to do so.  *See e.g.* **Exh. B**

23   (*Becker,* 76:21-25; 77:1-2).  All that was said was "The thing that is most unique about the depth

24   and dimension of the design relief is that they are elements that are used in creating specific and

25   unique designs."  *Id.*  Similarly, while Plaintiff claims that the colors used in their tiles are

26   unique, it does not describe or define the specific colors, it does not offer any evidence that its

27   use of the colors is exclusive, and it provides no evidence that Paragon uses those colors.  *See*

28   *e.g. Id. at* 84:6-11.

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 10**

MSJ MPA Final.doc

1      Moreover, while Plaintiff claims a monopoly on tiles that evoke French Provençal

2   motifs," it does nothing to indicate or specify what it is about those colors and motifs that may be

3   its protectable trade dress.  For example, when asked to describe the trade dress of Plaintiff's

4   Romanesque tile, Becker replied:  "What it is about their tile…is the fact that this tile is a part of

5   a collection that is recognized to be a Walker Zanger product." *Id. at 38: 22-25; 39: 1-7.*

6      Hence, it is impossible for another manufacturer to identify Plaintiff's alleged trade dress

7   in any meaningful way so that it could avoid infringing it.  *See Wal-Mart Stores,* 529 U.S. at 215.

8   Instead, Plaintiff would have the Court extend trade dress protection to its tiles for the most

9   abstract, ambiguous, metaphysical aspects that define characteristics common to virtually all

10  manufacturers of decorative ceramic tiles.  *See Yurman,* 262 F.3d at 114.

11     The futility of Plaintiff's identification claims is exemplified by its own witnesses, who

12  have identified tiles and tile lines from other manufacturers that fit the same overall description.

13  *See e.g.*  **IBD**, ¶3,8, 10, **Exhs. B** (Becker, 74:22-24; 75:8-18; 76:4-6; 85:18-19&25; 86:1-3; 89:3-

14  11; 90:19-25; 91:1-2; 92:14-25; 93:1), **G** (*Reed,* 37:9-12; 38), and **I** (*Leiferman,* 38:3-12).

15     For all of the above reasons, Plaintiff cannot assert trade dress protection for the claimed

16  elements of its tile lines, either.  *See, Landscape Forms*, 113 F.3d at 381 ("If the law protected

17  style at such a level of abstraction, Braque might have prevented Picasso from selling cubist

18  paintings in the United States.").

19     And for all of the same reasons, Plaintiff cannot obtain trade dress protection for its tile

20  displays.  Plaintiff has shown nothing to establish that its tile displays either do not simply reflect

21  industry wide practices or that any unique and protectable element of its displays are exclusive to

22  itself and copied by Plaintiff.  **IBD**,*¶2,* **Exh. B** (*Becker,* 152:1-6; 160:1-12)*.*

23     **3.**    **Plaintiff's Tile Designs Are Functional.**

24     Plaintiff bears the burden of proving nonfunctionality. 15 U.S.C. §  1125(a)(3); *Sega*

25  *Enterprises Ltd., v. Accolade, Inc*., 977 F.2d 1510, 1530-31 (9th Cir.1992).  Plaintiff has failed to

26  produce evidence sufficient under Section 43(a) of the Lanham Act to support that burden of

27  proof at trial. *See also, TrafFix Devices, Inc. v. Marketing Displays, Inc*., 532 U.S. 23, 32 (2001);

28  *Rachel v. Banana Republic inc.,* 831 F.3d 1503, 1506 (9th Cir. 1987).

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 11**
MSJ MPA Final.doc

1   The Ninth Circuit's four part test for functionality asks (1) whether the design yields a

2   utilitarian advantage; (2) whether alternative designs are available; (3) whether advertising touts

3   the utilitarian advantage of the design; and (4) whether the particular design results from a

4   comparatively simple or inexpensive method of manufacture.  *Disc Golf Ass'n, Inc. v. Champion*

5   *Discs, Inc.,* 158 F.3d 1002, 1006 (9th Cir. 1998); *Clicks Billiards,* 251 F.3d at 1260.

6   Even faithful copying of functional product configuration is not trade dress infringement:

7       Functional features of a product are features which constitute the actual benefit
        that the consumer wishes to purchase, as distinguished from an assurance that a
8       particular entity made, sponsored, or endorsed a product.  For an overall product
        configuration to be recognized as a trademark, the entire design must be
9       nonfunctional.  The right to copy better working designs would, in due course, be
        stripped of all meaning if overall functional designs were accorded trademark
10      protection because they included a few arbitrary and nonfunctional features.

11  *Leatherman Tool Group, Inc. v. Cooper Industries, Inc.,* 199 F.3d 1009, 1012 (9th Cir. 1999); *see*

12  *also, Wal-Mart* at 213 (quoted in pertinent part on page 1, above), and at n.12 ("Consumers

13  should not be deprived of the benefits of competition with regard to the utilitarian and esthetic

14  purposes that product design ordinarily serves.").  Thus, "a product feature whose impact is only

15  'decorative and aesthetic, with no source identifying role, cannot be given exclusive rights under

16  trade dress law.  *Clicks Billiards,* 251 F.3d at 1258; *see also, Seed Lighting Design Co. v. Home*

17  *Depot,* 2005 WL 1868152 at *5 (N.D. CA 2005).

18  Plaintiff has completely insufficient evidence to satisfy these standards.

19          a)      **Prong 1: Plaintiff's Tile Designs, Lines and Displays Yield Utilitarian**
20                  **Advantages.**

        Trade dress is functional if it is "essential to the use or purpose of the article and it affects

21  the cost or quality of the article."  *Leatherman Tool Group,* 199 F.3d at 1012.  Even if a product

22  feature is purely ornamental and otherwise serves no utilitarian purpose, it is essential to the use

23  or purpose of the product if it attracts consumers to buy the product instead of identifying the

24  source of the product.  *Id.; see also, Fabrica, Inc. v. El Dorado Corp.,* 697 F.3d 890, 894-95 (9th

25  Cir. 1993); *Schwinn Bicycle Co. v. Diversified Products Corp.,* 740 F.Supp. 517, 520-21 (N.D.

26  IL 1990) (exercise bicycle with wheel in front found functional because the public found it more

27  attractive that way).

28

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 12

MSJ MPA Final.doc

1    Plaintiff's tile designs are aesthetically functionally.   Plaintiffs' witnesses unanimously

2    testify that their customers exclusively select Plaintiffs' products for their aesthetic benefits. One

3    executive testified that the customers that he had sold tile to purchased the tiles for purely

4    aesthetic reasons.  **IBD***,¶3,* **Exh. B** (*Becker,* 166:17-21).  Another testified that "our customers

5    purchase our tile for the quality and the aesthetics." *Id. ¶14,* **Exh. M** (*Wright,* 60:6-7).  The

6    owner of an interior design firm agreed, testifying that "the majority of the time," a designer

7    recommends a tile to the customer because of the way the tile looks, not based upon the

8    manufacturer of the tile. *Id. ¶10,* **Exh. I** (*Leiferman,* 93:20-24; 94:1-6).  An executive from a

9    design center also chooses Plaintiff's tiles based upon the aesthetic appeal of the designs. *Id. ¶8,*

10   **Exh. G** (*Reed,* 13: 17-21; 31:2-11).  Finally, one customer surveyed by Dr. Osper's secondary

11   meaning survey of consumers remarked, "Ceramic tiles do not have a brand name recognition –

12   you go to the tile store and select what fits and is on display." **IBD***, ¶21,* **Exh. S** (Consumer

13   Survey).

14       In *Wallace International Silversmiths, Inc. v Godinger Silver Art Co., Inc.,* the Second

15   Circuit held that the plaintiff's "Grande Baroque" silver pattern was not a trademark, but rather

16   one design among many used by the plaintiff.  916 F2d 76, 80 (2nd Cir, 1990), *cert denied,* 499

17   U.S. 976 (1991) *(abrogation on other grounds recognized by Ashley Furniture Indus., Inc. v.*

18   *SanGiacomo N.A.,* 187 F.3d 363, 372 (4th Cir.1999)).  Like Plaintiff, *Wallace Int'l* was known

19   for the quality of its product, and, as in this case, testimony was presented that anyone

20   knowledgeable about the product could identify the plaintiff's pattern from those of competitors.

21   *Id.* at 79-80.

22       While acknowledging the similarities between the plaintiff's and the defendant's patterns,

23   the Second Circuit found that the typical elements of Baroque style -- curls, roots, and flowers --

24   were needed to compete in the silverware market because the style was popular.  *Id.* at 79-80.

25   Therefore, the defendant prevailed because aesthetic functionality of the design or ornamentation

26   acts as a complete bar to trademark protection.  *Id.* at 80-81; *see also, I.P. Lund Trading ApS v.*

27   *Kohler Co.,* 118 F.Supp.2d 92 (D.MA 2000) ("Primary significance" of faucet design was

28   aesthetic, not source identifying).

**I BRAUN DEGENSHEIN**
**ATTORNEY AT LAW**
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 13**

MSJ MPA Final.doc

1    Plaintiff is no different, as it proudly proclaims that its claimed trade dress elements are

2  the necessary result of the high quality nature of the manufacturing process.  **IBD**,*¶3,* **Exh. B**

3  (*Becker, 35:22 to 36:1, 71:14-25*).

4              b)       **Prong 3:  Plaintiff's Website, Advertising, Marketing, Witnesses
                        and Copyright Tout the Trade Dress' Utilitarian Advantages.**
5

6  Plaintiff's own evidence proves that its claimed trade dress is functional.  *See DCNL Inc. v.*

7  *Almar Sales Co.,* 47 U.S.P.Q.2d 1406, 1414 (N.D. Cal. 1997), *aff'd without opinion,* 178 F.3d

8  1308 (9th Cir. 1998) (no secondary meaning in advertisements that focus on functional features).

9  Of more than 4,300 consisting entirely of articles, press clippings and advertisements, the

10  handful of relevant pages all exclusively tout aesthetic utility.  *See, e.g.,* **IBD**,*¶12,* **Exh. K**

11  (*WZ00374 -75, WZ00653-57, WZ01426-28, WZ01773, WZ02966-68*).  Of all of those

12  documents, only around 147 (less than .03%) contain articles that mention the pertinent tiles or

13  tile lines.  *Trang Decl., ¶5.*  Of the 147 documents, only 4 mention the Romanesque tile by

14  name, and then only as a picture caption.  *Id., ¶ 6.*  Even the article in the February 15, 2000

15  issue of "Tile & Decorative Surfaces" magazine that introduced the Avignon line described the

16  line in purely laudatory, aesthetic terms like "exquisitely carved Romanesque Gothic and

17  Baroque designs" offered "in two glaze treatments that reveal "the details of the bisque

18  underneath" and provide "a deeper, more jewel-like finish."  **IBD**,*¶12,* **Exh. K**  (*WZ00378*).

19  Nothing indicates that any of these features are exclusive to Plaintiff or intended to designate

20  Plaintiff as the source.  *Id., ¶2,* **Exh. B** (*Petrocelli, 51:20-60, 63-64:13*).

21  Similarly, the *only* article of substance about the Newport line also focuses exclusively on the

22  tiles' aesthetic function without a single indication that any of the features are exclusive.  *Id., Id.*

23  *¶12,* **Exh. K** (WZ01773).  Plaintiff itself proudly emphasizes the practical and aesthetic utility of

24  the tiles' appearance to the virtual exclusion of any source identifying nature.  *Id. ¶3,* **Exh. B**

25  (*Becker, 35:22-25, 36:1, 71:14-25, 112:18-25*).

26      Lastly, Plaintiff's attempt to copyright all five tile designs is evidence that it recognizes

27  an aesthetic utility to each of the designs, and that the tiles were created to provide consumers

28  with aesthetically pleasing choices for the design of their kitchens and baths.  *See TrafFix*

**I Braun Degenshein**
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 14**
MSJ MPA Final.doc

1   *Devices,* 532 U.S. at 32.

2            **4.    Plaintiff Has Failed To Establish Secondary Meaning**

3            Since its Lanham Act claims involve product design trade dress, Plaintiff bears the

4   burden of proving that its claimed trade dress has acquired trademark status in the minds of the

5   consuming public.  *Wal- Mart.*, 529 U.S. at 215-16.  A plaintiff's trade dress acquires secondary

6   meaning when the purchasing public associates the dress with a particular source.  *Fuddruckers*

7   *Inc. v. Doc's B.R. Others, Inc.,* 826 F. 2d 837, 843 (1987).

8            Proving secondary meaning generally "entails vigorous evidentiary requirements."  *Perini*

9   *Corp. v. Perini Constr.*, 915 F.2d 121, 125 (4th Cir. 1990).  Such evidence may be direct or

10  circumstantial.  *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC* (*Yankee Candle*) 259

11  F.3d 25, 43-44 (2nd Cir. 2001).    Plaintiff has neither.

12            **a)    Plaintiff Has No Direct Evidence of Secondary Meaning.**

13            Plaintiff's direct evidence of secondary meaning, such that it is, cannot address its burden

14  of proof.  As the First Circuit recognized, "The only direct evidence probative of secondary

15  meaning is consumer surveys and testimony by individual consumers." *Yankee Candle,* 259

16  F.3d at 43 (*citing I.P. Lund Trading ApS v. Kohler Co.,* 163 F.3d 27, 42 (1st Cir.,1998)); *see also,*

17  *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 615 (9th Cir.1989); *Seed Lighting Design,*

18  2005 WL 1868152, *5.  Although survey evidence is not required, "an expert survey of

19  *purchasers* can provide the most persuasive evidence of secondary meaning." *Vision Sports,* 888

20  F.2d at 615 (emphasis added).

21            Plaintiff has no consumer testimonials.  **IBD**,*¶2,* **Exh. A** (*Petrocelli,* 96:9-25).  Plaintiff's

22  witnesses state that customers would not know the tiles' source without a label.  *Id., ¶8, 10,* **Exh.**

23  **G** (*Reed,* 86;11-25; 87:2-23) and **I** (*Leiferman Depo.* 41: 35; 42: 1-4).

24            Plaintiff's secondary meaning survey that it designated for use at trial is ill conceived and

25  designed.  This survey, of interior designers only, was conducted on October 14 - 24 and

26  November 4 - 10, 2005.[3]  **IBD**,*¶15,* **Exh. N** (Dr. Osberg's Survey to Determine Extent to which

27  _____

28  [3] The survey was conducted in two parts, the first part of fewer than half of the respondents was conducted in six

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 15**
MSJ MPA Final.doc

1   Walker & Zanger Ceramic Tiles Have Acquired Secondary Meaning (If At All) Among Interior

2   Designers (hereinafter, "Oster Survey")).  It is so riddled with problems that it is should be

3   inadmissible.  *Clicks Billiards,* 251 F.3d at 1262; *see also, Paragon's Motion to Strike Survey*

4   filed concurrently herewith.  Plaintiff's secondary meaning survey is inadmissible because

5   Paragon says its customers include interior designers, builders, design centers, architects,

6   contractors and end users (i.e., home owners or purchasers and retail customers).  **IBD**, *¶2,10,14,*

7   **Exhs. A** (*Petrocelli,* 91:15-25), **I** (*Leiferman,* 100: 2- 25; 101:9-15) and **M** (*Wright,* 8:23-25; 9:1-

8   2).  Yet interior designers are surveyed to the exclusion of all others.   **IBD**, *¶15,* **Exh. N** (Osberg

9   Survey).

10          Thus, Plaintiff's survey is fatally flawed, under-inclusive, it consists of the hand picked

11   universe that it admits is the one class of "customers" sophisticated enough to identify the

12   product without suffering confusion.  *See* **IBD**, *¶3,8,10,* **Exhs. B** ( *Becker,* 136:12-18; 141:20-25;

13   142:1-9) (disqualifying designers as retail or average customers because they are a special

14   segment of customers with specialized knowledge and are "much more likely to recognize

15   specific elements in tiles as unique to" Plaintiff.), **G** (*Reed,* 33: 2-6) and **I** (*Leiferman,* 71:8-25;

16   72: 8-14) (only designers who had prior experience with the tiles or who "knew the line well"

17   have been able to identify Plaintiff's tiles by simply viewing them).  Using such specialists is

18   clearly improper.  *Vision Sports, supra,* 888 F.2d at 615.

19          **b)      Plaintiff Has No Circumstantial Evidence of Secondary Meaning**

20          Circumstantial evidence of secondary meaning includes evidence of (1) the length and

21   exclusivity of use of the trade dress; (2) the nature and extent of advertising and promotion of the

22   trade dress (3) the existence of substantial advertising; (4) the product's established place in the

23   market; (5) proof of intentional copying; and (6) "look for" promotion that specifically directs a

24   consumer's attention to those features claimed as trade dress.  *Yankee Candle,* 259 F.3d at 43-44.

25          **i.      Plaintiff's Tiles, Tile Lines and Tile Displays Had Not Been In**

26

27   markets where Plaintiff and Defendant compete.  The second part was conducted in markets where they do not
     compete.  **IBD** *Decl., ¶20,* **Exh. R** (*Cogan Decl.*,  pp. 3-6)

28

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**Existence Long Enough to Acquire Secondary Meaning.**

Plaintiff must prove that its claimed trade dress had secondary meaning when Paragon first chose its tile designs.  *Carter-Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 802 (9th Cir. 1970).  Plaintiff's survey was conducted more than three years after Paragon first conceptualized its Bellisima line and nearly two years after Plaintiff learned of Paragon's tiles. **IBD**,*¶7,* **Exh. F** (*Bedrosian,* 91:19-21, 93:21-25, 95:1&12-25, 96:1&8-18).  The two to three years from the introduction of the tiles to the time Paragon allegedly first used them is insufficient time for a product design to insinuate itself into the minds of the general public as a source identifier.  *See* Lanham Act § 2(f), 15 U.S.C.A. § 1052(f); *Stuart Hall Co. v. Ampad Corp.*, 51 F.3d 780, 789-90 (8th Cir. 1995).  The fame of Plaintiff's tiles as measured today cannot possibly evidence the fame of its tiles as measured only two to three years after they were first introduced, before the bulk of its advertising took place.  *See, Trang, ¶4-7,* **Exh. A.**

> ii.    **Plaintiff's Advertising Does Not Promote Plaintiff's Claimed Trade Dress as a Source Identifier and Its Source Identifying Advertising Expenditures Are Nonexistent**

Extensive advertising promoting utilitarian advantages without calling attention to the alleged non-utilitarian design does not evidence secondary meaning. *Yankee Candle,* 259 F.3d at 44; *Brooks Shoe Mfg. Co. v. Suave Shoe Co.,*716 F.2d 854,860 (11[th]Cir.1983); *Continental Laboratory Products, Inc. v. Medax Intern., Inc.,*114 F.Supp.2d 992,1000 (S.D. Cal. 2000).

Plaintiff has not produced a single example of advertising that does anything more than picture the product or mention it generally in the text of an article. *Trang, ¶4-7,* **Exh. A.**  In fact, less than 0.01% of the documents produced by Plaintiff mention the allegedly infringed tiles or tile lines by name, and less than 0.02% show any of the allegedly infringed tiles, and none show a single allegedly infringed tile display. *Id.*

Plaintiff has not produced any evidence of any advertising expenditures directed at establishing secondary meaning. *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.,* 716 F.2d 854, 860 (11th Cir.1983).  *See, In re Redken Laboratories, Inc.,* 170 U.S.P.Q. 526, 529 (T.T.A.B. 1971). Plaintiff points to "millions" of dollars spent on advertising, however, the court has been clear that a "large expenditure of money does not in itself create legally protectable rights." *Carter-*

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 17**
MSJ MPA Final.doc

1  *Wallace, Inc. v. Procter & Gamble Co.,* 434 F.2d 794, 800 (9th Cir.1970).   To serve as evidence

2  of secondary meaning, the expenditures must be for advertising of the type and nature that will

3  create secondary meaning.  Brooks, 716 F.2d at 860; *In re Swift & Co.,* 223 F.2d 950, 954

4  (C.C.P.A. 1955).

5  No matter how many millions of dollars were spent by Plaintiff on advertising over the

6  past five years, the evidence shows that little, if any was devoted to the pertinent tiles and tile

7  lines in any way.  **IBD**, *¶2,* **Exh. A** (*Petrocelli,* 76:7-25; 77:1-10); *Trang Decl., ¶5-8,* **Exh. A;**

8  *See, In re Kwik Lok Corporation,* 217 U.S.P.Q. (BNA) 1245, 1247-48 (T.T.A.B. 1983).

9  **iii.    Plaintiff Has No Evidence of its Products' Market Placement.**

10  Plaintiff has absolutely no evidence of its products' market placement.  **IBD**, *¶2,* **Exh. A**

11  (*Petrocelli,* 39:21-23; 41: 11-18).   It only acknowledges that it is but one of many who market

12  high-end, luxury tiles.  *Id.*

13  **iv.    Plaintiff Has No Proof of Intentional Copying.**

14  Mere evidence of copying is not at all probative of secondary meaning unless it is

15  accompanied by "an intentional attempt to capitalize on a company's reputation or goodwill,"

16  i.e., "to pass off one's goods as those of another."  *Seed Lighting,* 2005 WL 1868152 at *10,

17  *citing Fuddruckers,* 826 F.2d at 844 and *Yankee Candle,* 259 F.3d at 45.  There cannot be a *per*

18  *se* rule because "copying wholly functional features that [are perceived] as lacking any

19  secondary meaning because of those features' intrinsic economic benefits" may be completely

20  legitimate.  *Id.* at 844, n.9.

21  Assuming, *arguendo,* that Defendant copied Plaintiff's tiles, there is no evidence that it

22  did so with such intent.[4]  Plaintiff has no evidence that Paragon represented that it was associated

23  with or sold its tiles under Plaintiff's name or that Paragon suggested that Plaintiff was the

24  source of its tiles.  **IBD,***¶2,* **Exh. A** (*Petrocelli,* 92:17-25).  To the contrary, Plaintiff only has

25  evidence that Defendant honestly expressed the source of its tiles.  *Id., ¶13,* **Exh. L** (*Foster,*

26

27  [4] Even if there were evidence of intent to deceive, it would not shift the burden of proof to Defendant.  *Fuddruckers* 826 F.2d at 844.

28

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

1   73:13-16; 99:21-25; 100: 1-2).  Most importantly, Plaintiff can only show the copying of an

2   aesthetically functional design for purchasers to adopt into their decors.  **IBD**,*¶7,*  **Exh. F**

3   (*Bedrosian,* 91:19-21; 93:21-25; 95:1, 12-25; 96:1, 8-18; 282:6-21).

v.       **Plaintiff Has No "Look For" Promotions**

5          Advertising that merely pictures a product shape and fails to draw attention to its features

6   as a source identifier infers that there is no trademark status.  *Yankee Candle,* 259 F.3d at 44.

7   Instead, a party trying to prove secondary meaning must present "look for" advertising.  *Int'l*

8   *Jensen,* 4 F.3d at 824; *see also, Marc Bric Display Corp. v. Joseph Struhl Co., Inc.,* 2003 WL

9   21696318 at *11 (D.RI 2003); 1 *McCarthy,* § 7:30.  Plaintiff has no such advertising.  *Trang*

10  *Decl., ¶¶* 4-7 & 8; *see also,* **IBD**,*¶2,* **Exhs. A** (*Petrocelli,* 51:24;52– 60, 63) and **Exh. M**.  When

11  specifically asked to do so, Plaintiff could not identify even a single sentence in its discovery that

12  it contends supports its allegations of secondary meaning.  **IBD**,*¶2,5,* **Exhs. A** (*Petrocelli,*

13  51:24;52– 60, 63) and **D** (*Pltf's Resp. to Interrogs.* 30-32).

14         This lack of "look for" advertising evidences only that Plaintiff's alleged infringed trade

15  dress has not acquired secondary meaning.  *First Brands Corp. v. Fred Meyer, Inc.,* 809 F.2d

16  1378, 1383 (9th Cir. 1987); *Kykes Laboratory, Inc. v. Kalvin,* 610 F.Supp 849, 862 (C.D. Cal.

17  1985); *DCNL,* 47 U.S.P.Q.2d at 1414.

18         **5.       Plaintiff Has Failed To Establish Likelihood Of Confusion**

19         In *Two Pesos Inc.,* the Supreme Court held that "the ultimate test" under §43(a) is

20  whether the public is likely to be deceived or confused by the similarity of the marks."  505 U.S.

21  at 780 (citations omitted).  The "likelihood of confusion" must be as to source or sponsorship,

22  and not merely confusion between the goods themselves.  *Fuddruckers,* 826 F.2d at 845.

23         In the 9th Circuit, likelihood of confusion for trade dress is determined by considering

24  "evidence of actual confusion, the defendant's intent in adopting the mark, similarity of marks,

25  similarity of goods and marketing channels, and the strength of the mark" (*Id.* at 845),  and the

26  degree of care and sophistication of customers.  *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348

27  (1979). The list is not exhaustive, no one factor is dispositive, and the factors must be balanced

28  and considered together in light of the circumstances**.**  *Id.,* 347-48.  Plaintiff cannot produce

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 19**
MSJ MPA Final.doc

1  evidence that favors a balance that support its claims.

2            **a)**     **There is No Evidence of Actual Confusion**

3        Evidence of actual confusion is considered persuasive proof that future confusion is

4  likely. *AMF, Inc.,* 599 F.2d at 352.  Yet Plaintiff has not produced a scintilla of evidence of

5  actual confusion. **IBD**,*¶2-4,* **Exhs. A** (*Petrocelli,* 92:17-25), **B** (*Becker,* 154:7-25, 155:1-15) and

6  **C** (*Bastone,* 12:14-25, 13:1-3).

7        There is no evidence that Defendant misrepresented the source or affiliation of its or

8  Plaintiff's tiles, used a photograph of Plaintiff's product to advertise or promote its own product,

9  or used Plaintiff's name or logo to sell its products.  *Id., ¶2-4,* **Exhs. A** (*Petrocelli,* 92:17-25) and

10  **B** (*Becker,* 154:7-25, 155:1-15); *see, Smith v. Montoro,* 648 F.2d 602, 604 (9th Cir. 1980).

11        Two of Plaintiff's executive employees who are uniquely situated to get reports of

12  confusion testified that they knew of none.  **IBD**, *¶4, 14,* **Exhs. C** (*Bastone,* 12:14-25, 13:1-3)

13  and **M** (*Wright,* 68:12 - 70:6).  One, the director of builder sales, identified at least ten design

14  centers that display Plaintiff's and Defendant's tiles in identical manners within close proximity

15  to one other, without indication of origin.  *Id.,* **Exh. M**  (*Wright,* 68:12 - 70:6). Nevertheless, no

16  one ever reported confusion of any kind to her. *Id,*  76:18 – 78:8.

17        Plaintiff's private investigator also testified that he never believed the tiles that

18  Defendant's salespersons were showing him were manufactured by Plaintiff.  **IBD**,*¶13,*  **Exh. L**

19  (*Foster,* 151:21-23).  Moreover, he reported no one represented in any way that Defendant's tiles

20  were manufactured by or affiliated with Plaintiff, and no one indicated confusion.  *Id.* at 153:7-

21  13; 154:1-7.  His report only shows that everyone knew the differences between the tiles and the

22  true source of the tiles.  *Id.* at 73:13-16; 99:21-25; 100:1-2.

23        Defendant's third party witnesses also testified that there was no confusion.  In all the

24  years that one had been selling Defendant's Bellisima line**,** no one has expressed confusion

25  between the products or their sources. **IBD**,*¶8,* **Exh. G** (*Reed*[5], 33:8 - 34:8).  Another testified

26  _____

27  [5] Reed is Vice President of On-Site Design, a prominent the design center.  She is responsible for managing the design center locations and making purchasing decisions for materials that they have inside the design center. **IBD**

28  *Decl. ¶10, Ex. I: Reed,* 11: 4-6.

**I Braun Degenshein**
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 20**

MSJ MPA Final.doc

1  that she had not been confused and that no one ever expressed confusion to her.  *Id., ¶10,* **Exh. I**
2  (*Leiferman,* 43:13-47, 15, 90:6-17).

3  Defendant's survey of consumers for likelihood of confusion only proves that there is
4  none.  Of 211 consumers surveyed in six states and nine cities in which the parties compete, not
5  one mentioned Walker Zanger by name.  **IBD***, ¶20,* **Exh. R** (Cogen Suppl. Decl., ¶58).
6  Moreover, Dr. Osterman's survey clearly reveals that an insignificant level of confusion existed.
7  *Id., ¶20,* **Exh. R** (*Cogen Supp. Decl.*, ¶98); *see, .*

8  **b)    Defendant Did Not Copy Any Trade Dress With the Intent to Deceive**
9  For the reasons set forth in subsection (IV.B.4.b.iv.) above, Plaintiff has no evidence that
10  Defendant copied its claimed trade dress with the intent to trade on Plaintiff's good will or to
11  deceive the public.

12  **c)    Any Similarity To the Alleged Trade Dress is Irrelevant**
13  Even if Plaintiff can show that the entirety of the elements constitute protectable  trade
14  dress, it has presented absolutely no evidence that Paragon has copied all of those elements.  *See*
15  *Schwinn Bicycle Co.,* 740 F.Supp at 520; *AmBrit Inc. v Kraft Inc.,* 812 F.2d 1531, 1537 (11th Cir
16  Fla 1986)*; Falcon Rice Mill Inc. v Community Rice Mill Inc.,* 725 F2d 336, 346 (5th Cir La
17  1984)*.*

18  **d)    The Products and Marketing Channels Are Different**
19  Although both products are ceramic tiles, every one of Plaintiff's witnesses distinguishes
20  between a market for handmade, high-end tiles and a market for less expensive, machine made
21  tiles.  **IBD** *¶2,4,10,14,* **Exhs. B** (*Petrocelli Depo.* 39:21-23; 41:11-18), **C** (*Becker,* 46:5-10) **D**
22  (*Bastone,* 21:16-17, 18:6-7; 19:17-19), **K** (*Leiferman,* 29:18-25, 30:6-7) and **O** (*Wright Depo,*
23  58: 23-25; 67).  The parties target different customers )*Id.,¶7,8, 10, 14,* **Exh. F** (*Bedrosian,*
24  92:17-25, 231:4-6), **Exh. G** (*Reed,* 20:9-25 & 21:1-5, 9-12, 26:20-25, 27: 1); **Exh. I** (*Leiferman,*
25  30); and **M** (*Wright,* 8:23-25; 9:1-2)), and they market and advertise in completely different
26  ways.  *Id., ¶ 2, 4, 5:* **Exhs. A** (*Petrocelli,* 103:17-25, 104:1-12, 109:12-25); **C** (*Bastone,* 8:15-21,
27  21:16-17, 23:3-5); **D** (*Resp. to Interrog Resp. No. 15)* and **I** (*Reed,* 20:9-25 & 21:1-5, 9-12,
28  26:20-25, 27: 1).  Accordingly, Plaintiff cannot carry this element, either.

I Braun Degenshein
Attorney at Law
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 21**
MSJ MPA Final.doc

## C.  PARAGON DID NOT COMMIT FALSE ADVERTISING

The elements of a false advertising claim under Section 43(a) are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product;  (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision;  (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.  *Southland Sod Farms* at 1139.  Plaintiff has not produced any evidence to support any one of these elements.

## D.  PLAINTIFF'S STATE AND COMMON LAW ACTIONS MUST FAIL

The Ninth Circuit has consistently held that all unfair competition and false advertising claims, whether under the Lanham Act, state, or common law, all stand and fall together. *Cleary,* 30 F.3d at 1262-63 (citations omitted).  Accordingly, for all of the reasons set out in sections A to C, above, Plaintiff's state and common law claims fail.

## E.  DEFENDANT DID NOT COMMIT COPYRIGHT INFRINGEMENT

In order to establish infringement, Plaintiff must prove: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  *Feist Publ'ns,* 499 U.S. at 361.

Plaintiff's copyright certificates are *prima facie* evidence of these requirements.  17 U.S.C. § 409(c).  However, they do not create a presumption that Plaintiff did not copy the designs of those tiles.  *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996).

The evidentiary weight to be given the copyright certificates is within the court's discretion.  *Id.*  Section 409(c) presumptions may be rebutted easily with any evidence that will raise a question as to whether Plaintiff's design was based on another. *Durham Industries. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir. 1986); *North Coast Industries v. Jason Maxwell, Inc.,* 972 F.2d 1031, 1033 (9th Cir. 1992); *Entertainment Research Group, Inc. v. Genesis Creative Group, Inc.,* 122 F.3d 1211, 1218 (9th Cir. 1997).

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 22**

MSJ MPA Final.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 1.    Prong 1:  Plaintiff's Copyright Certificates Are Not Valid

A material misrepresentation on a copyright certificate application is grounds to invalidate the certificate.  *See, Lennon v. Seaman,* 84 F.Supp.2d 522, 525-26 (S.D.NY, 2000) ("Establishing that the certificate was obtained through fraud" overcomes the presumption of validity.  (citations omitted)).  As the following subsection sets out, Plaintiff's copyright certificates contain material misrepresentations.  However, since Plaintiff does not carry the burden of proving that its statements are not fraudulent, Paragon will focus its attention on the second prong in the next subsection.

### 2.    Prong 2:  Plaintiff's Tile Designs Lack the Required Originality

A copyright is invalid if the work it applies to is not original or does not contain the sufficient modicum of originality to satisfy the Copyright Act's requirements.  *Feist Publ'ns,* 499 U.S. at 345. ("Original, as the term is used in copyright, means only that the work was independently created by the author (*as opposed to copied from other works*)" (emphasis added)).  Where the work is based upon prior existing work, as here, the work must have "distinguishable variation" that is not merely trivial.  *Midway Mfg. Co. v. Bandai-America, Inc.,* 546 F. Supp. 125, 151 (D.N.J. 1982); *Durham Industries, supra.*  "The extent to which a copyrighted work contains protected expression is a matter of law, determined by the court."  *Yankee Candle,* 259 F.3d at 33, n.5.

Both of Plaintiff's tile designs are derivatives of preexisting designs.  *Complaint,* **Exh.** B.  A derivative work is one which is substantially copied from a prior work.  *Litchfield v. Spielberg,* 736 F.2d 1352, 1357 (9th Cir.1984), *cert. Denied,* 470 U.S. 1052 (1985).  The scope of the copyright in a derivative work covers only the elements contained in the work that are original to the copyright claimant.  *Durham Industries, supra.*  Likewise, copyright in a work derived from a work in the public domain does not extend copyright protection to the public domain work.  17 U.S.C. § 103(b); *Cooling Systems & Flexibles, Inc. v. Stuart Radiator, Inc.,* 777 F.2d 485, 490 (9th Cir. 1985), *overruled on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994).

There is a plethora of evidence that casts doubt on and completely contradicts Plaintiff's § 409(c) presumption of originality.  For example, Plaintiff's Fed.R.Civ.Proc. 30(b)(6) witness

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 23**

MSJ MPA Final.doc

testified that his sole inspiration and evidence of independent and original creation is contained in 2 pages relating to the two designs. **IBD**,*¶2,12,* **Exh. A**.(*Becker,* 20: 6-19; 23:17-25; 24:1-6; 104: 18-24 and **Exh. K** (WZ4189 and WZ4199).

Plaintiff's witness also testified, however, that a particular reference book is in Plaintiff's vast reference library. *Id.,* 19:15-25; 20:1; 26:17-21**.** This particular reference book contains virtually identical images of the very designs that Plaintiff claims it originated. *Id..¶16,* **Exh. O** (*Culwell Decl,* pp. 4-7, 8, 10). The stark dissimilarities between Plaintiff's tiles and its claimed "inspirations," and the striking similarities between Plaintiff's tiles and the published precedents cannot be mere happenstance. *See, also, Id., ¶17,* **Exh. P** (*Culwell Addendum,* ¶ 2, 5-9, 10, 13).

Plaintiff also casts doubt on the validity of its copyright certificates by admitting that other information on the certificates is not correct. **IBD**,*¶2,* **Exh. A** (*Petrocelli,* 126: 12-25; 127:1-3) and **B** (*Becker,* 101:19-25; 102:1; 105:11-17). Additionally, Plaintiff claims its Fleur-de-Lis tile contains all of the same protectable elements of its Romanesque and Treillage tiles. *Id., ¶E,* **Exh. D** (*Pltf's Resp. to Interrog. No. 4, 14-16*). Yet the Fleur-de-Lis design was refused registration because it lacked the requisite originality. *Id.,¶6,* **Exh. E** (*Letter* dated February 13, 2004 from John M. Martin, Examiner to Bruce A. Jagger); *see also, Compendium II: Compendium of Copyright Office Practices*[6] § 503.02(a), (b) and (c) (1984); and 2 Nimmer, *Nimmer on Copyrights,* § 7.21(A) (The Register has broad discretion to determine what is or is not copyrightable that will not be reversed unless the decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.")

Lastly, for infringement to occur when the author contributes only small changes to an unprotectable design or idea, the copying of the original contributions would have to be virtually identical. *Ets—Hokin v. Skyy Spirits, Inc.,* 323 F.3d 763, 766 (9th Cir. 2003); *Apple Computer*, 35 F.3d at 1439 ("When the range of protectable expression is narrow, the appropriate standard

---

[6] *Compendium II* is used by Copyright Office staff in making registrations and recording documents. See 37 C.F.R. 201.2(b)(7). For the Court's convenience, the cited portions of *Compendium II* are reproduced in Appendix A to this brief.

I BRAUN DEGENSHEIN
ATTORNEY AT LAW
81 SKYWAY LANE
OAKLAND, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 24**

MSJ MPA Final.doc

1   for illicit copying is virtual identity."); *Satava v .Lowry,* 323 F.3d 805, 812 (9th Cir. 2003)

2   ("copyright on these original elements (or their combination) is 'thin,' however, comprising no

3   more than his original  contribution to ideas already in the public domain.")

4           Nothing in Paragon's tiles are "virtually identical copies" of any copyrightable elements

5   in Plaintiff's tiles.  The only possible contributions to the public domain acanthus leaf design that

6   Plaintiff can claim involve the height and depth of relief, the twist of the leaves and the generic

7   architectural details above and below the motif.  **IBD**, *¶3,* **Exh. B** (*Becker Decl.,* 21:5-25; 22;

8   23:1-8).  Similarly, the only contributions to the public domain image copied for the Treillage

9   design were the unification of the interlocking bands, the raised the relief, and the addition of the

10  generic architectural design at the top of the tile.  *Id.* at 107:23 to 108, 112:10-25.

11          Comparison proves that the only things that may have been copied from Plaintiff's tiles

12  are the unprotectable idea of the three dimensional relief and the unprotectable use of

13  architectural moldings on a decorative wall tile.

14          In light of all of the above, the record clearly shows that Plaintiff's tile designs are

15  virtually verbatim copies of works that predated Plaintiff's designs by decades, if not centuries.

16  Because the burden has shifted to Plaintiff on all elements of its copyright infringement claims, it

17  has completely failed to present an iota of evidence to prove this essential element, "[rendering]

18  all other facts immaterial."  *Celotex,* 477 U.S. at 323.

19                          **V.       CONCLUSION**

20          In light of all of the above, even taking all inferences in the light most favorable to

21  Plaintiff, Plaintiff has not produced and, indeed, cannot adduce the quantum of evidence it needs

22  to meet its burden.  This absence of any evidence supporting Plaintiff's claims warrants summary

23  judgment.  Accordingly, Defendant respectfully requests this Court grant the requested relief and

24  grant Summary Judgment dismissing Plaintiff's Complaint in its entirety, with prejudice.

25  **Dated:**  January 26, 2006

26                                  Respectfully submitted,

27                                  **I Braun Degenshein**
                                    **Attorney at Law**

28                                  /s/ I Braun Degenshein

**I Braun Degenshein**
**Attorney at Law**
81 Skyway Lane
Oakland, CA 94619
510-553-9669

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 25**
MSJ MPA Final.doc

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

_____

by:  I Braun Degenshein
Attorney for defendant Paragon Industries, Inc.

**DFDT'S MPA ISO MOT. FOR SUMMARY JUDGMENT – Page 26**

MSJ MPA Final.doc